COMMONWEALTH vs. DONALD K. DELISLE.

Suffolk. May 5, 2003. - September 10, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Due Process of Law,* Probation revocation. *Practice, Criminal,* Probation, Revocation of probation.

The Superior Court judge who revoked the defendant's probation did not improperly impose a penalty on the defendant's exercise of his right under the Fifth Amendment to the United States Constitution against compelled self-incrimination, where the defendant's probation was not revoked merely because he refused to make disclosures concerning his own criminal conduct, but also because the defendant had been convicted of violent offenses and had been charged with an assault; moreover, there was no basis for the defendant's claim that his privilege against self-incrimination was implicated in the circumstances of the case, where the letter that a counselling program required the defendant to write, detailing his acts of abuse against his wife as a prerequisite for reenrollment in the program, was not sought by the Commonwealth, and where failure to write the letter did not automatically mean that the defendant's probation would be revoked. [142-145]

There was no merit to a criminal defendant's argument that the requirement that he participate in a particular counselling program, imposed as a condition of his probation after his first surrender hearing, constituted an improper modification of his original probation conditions. [145]

INDICTMENTS found and returned in the Superior Court Department on February 6, 1990.

A probation surrender proceeding was heard by *David M. Roseman,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*William W. Adams* for the defendant.

*Jane A. Sullivan,* Assistant District Attorney, for the Commonwealth.

*Thomas F. Reilly,* Attorney General, & *Natalie Monroe,* Assistant Attorney General, for Attorney General, amicus curiae, submitted a brief.

CORDY, J. Donald K. Delisle appeals from an order of a judge sitting in the Suffolk Superior Court finding him in violation of his probation, revoking it, and imposing his suspended sentence. Delisle argues that the revocation was unlawful under the Fifth Amendment to the United States Constitution because it was based on his termination from a prescribed counselling program that resulted in part from his failure to write a "self-incriminating disclosure" of his abuse of his wife. Delisle also argues that the revocation was unlawful because the conditions of the probation he violated had been impermissibly modified subsequent to their original imposition. We transferred this case here on our own motion and now affirm the order revoking probation.[1]

*Background.* On December 13, 1990, a Hampshire County Superior Court jury convicted Delisle of violating an abuse prevention order (three counts) (G. L. c. 209A, § 7), assault and battery (G. L. c. 265, § 13A), intimidation of a witness (G. L. c. 268, § 13B), and attempted extortion (G. L. c. 265, § 25). He was sentenced to a total of four years committed to a house of correction on the convictions of violating an abuse prevention order and assault and battery. On the attempted extortion conviction, Delisle received a State prison sentence of from twelve to fifteen years, suspended for a four-year period of probation to commence on his release from the house of correction.[2] The sentencing judge imposed several special conditions of probation, including that Delisle "participate in substance abuse counseling and in personal counseling or therapy as ordered by the probation department."

In May, 1995, Delisle was released from incarceration and placed on probation in Hampshire County. In addition to the special conditions of probation imposed by the sentencing judge, Delisle was also required to pay a monthly probation fee of thirty dollars. Delisle signed a probation contract setting forth the standard terms and special conditions of his probation with a notation next to his signature reading "[s]igned while case on appeal under duress [and] stress." Shortly thereafter, Delisle

[1] We acknowledge the amicus brief submitted by the Attorney General.

[2] Delisle's conviction of intimidating a witness was placed on file with his consent.

moved to Boston and his probation was transferred to Suffolk County. Delisle was subsequently surrendered on his probation three times, the last of which is the subject of this appeal.

Delisle's first surrender resulted from his failure to pay the monthly probation fee. After a surrender hearing on January 28, 1998, a judge in the Superior Court reimposed Delisle's probation to its original term and directed that he participate in substance abuse counselling by attending Alcoholics Anonymous (AA) meetings three or more times weekly and that he participate in personal counselling by enrolling in the "Emerge Program" for batterers (Emerge). Emerge is a private, nonprofit corporation that provides education and counselling services to batterers. Delisle signed a revised probation contract that included the requirements of participation in AA and Emerge, without objection.

During the spring and summer of 1998, Delisle attended AA sessions and some, but not all, of his scheduled Emerge sessions. As a consequence of poor attendance and poor performance, he was expelled from Emerge on August 26, 1998. During this same period, he was also charged on three separate occasions with criminal violations of G. L. c. 209A in the East Boston District Court. The complainant in each instance was the woman Delisle had married while incarcerated.[3] On the basis of his expulsion from Emerge and the new criminal complaints brought against him in East Boston, Delisle was surrendered on his probation for a second time in October, 1998. A surrender hearing was held in the Superior Court on December 12, 1998, after which the judge reimposed Delisle's probation, extending it from May 12, 1999, to December 14, 1999.[4] The judge also ordered that all previously imposed probation conditions were to remain in effect, and directed that Delisle present documentary proof of his attendance at Emerge sessions to his supervising probation officer every fourteen days. Delisle posed no objection to the ruling, and again signed a probation contract incorporating all of the pertinent probation conditions.

[3] This is not the same woman Delisle was convicted of assaulting and abusing in Hampshire County in 1990.

[4] The original four-year period of probation would have expired on May 12, 1999.

The condition that Delisle continue to attend Emerge sessions, in spite of having been "terminated" from the program in August, was apparently the result of Delisle's decision to accept an offer by Emerge to allow him to reenter the program if he met certain conditions. Emerge extended that offer in a letter to Delisle dated November 17, 1998. One of the conditions for readmission was that he "[n]ot be verbally, emotionally, financially, or physically abusive toward [his wife] . . . ." Another was that he not accept money from her for his weekly program fee (twenty dollars). A third was that he "[w]rite a letter stating all your abuse of [his wife], the effects of each act on [her], and how each occurrence could have been avoided."[5] Following his receipt of this offer of readmission, Delisle attended an Emerge session on December 8, 1998.[6]

On December 15, 1998, the day after his surrender hearing and his agreement to the condition that he resume regular attendance at Emerge sessions, Delisle took twenty dollars from his wife's bank account and went to a session. Emerge personnel informed him that he had not yet met the conditions for readmission into the program (as set forth in the November 17 letter) and that he would have one week to comply with the condition that he write the reenrollment letter, or his readmission would be denied. Delisle left the session, went home, blamed his wife for his predicament, and physically assaulted her.

The next day his wife telephoned Emerge and related what had happened when Delisle returned from the session. She then telephoned Delisle's probation officer for the same purpose. Emerge sent a letter by facsimile transmission, dated December 16, 1998, to Delisle's probation officer advising him that Delisle was not going to be readmitted to its program because he had

---

[5]It is undisputed that the only purpose for which Emerge requires such a letter as a condition of readmission to its program is to assess the batterer's amenability to treatment, and especially his ability to identify alternatives to violence.

[6]An official at Emerge later described Delisle's participation at this one session as "poor" insofar as "[h]e consistently minimized and denied engaging in any violent behavior towards [his wife] despite informing the group that he had been arrested on several charges of domestic assault and battery and restraining order violations [and] sought to blame [his wife] for his abusive behavior and . . . to present himself as her victim."

abused his wife, used her money to pay for a program session, and failed to write the reenrollment letter.

After receiving this letter from Emerge, Delisle's probation officer prepared a surrender notice (dated December 18, 1998) alleging that Delisle had violated the terms of his probation by reason of (1) his termination from Emerge and (2) new criminal complaints for abuse and assault brought against him in the Lynn District Court on October 20, 1998, that had been unknown to the probation officer and the judge at the time of the December 14, 1998, surrender hearing. On receiving this surrender notice, Delisle had another altercation with his wife that led to his arrest and yet another set of criminal charges being brought against him in the East Boston District Court.

On December 28, 1998, an amended notice of surrender was served on Delisle, citing these new charges as an additional ground for surrender, and also adding the assault on his wife that occurred on December 15, 1998 (when Delisle returned home from the Emerge session), as a ground for surrender separate from his termination from Emerge.[7]

A third surrender hearing was held over four days in January and February, 1999. Delisle's probation officer, a senior staff member of Emerge, Delisle, his wife, and other witnesses testified at the hearing. Just prior to the commencement of the surrender hearing, a jury in the Lynn District Court found Delisle guilty of the assault and abuse charges that had been brought against him on October 20, 1998, and he was sentenced to serve four and one-half years in a house of correction. At the surrender hearing, Delisle conceded that he had been convicted and sentenced on these offenses, and that they constituted one of the grounds on which his present surrender had been based. At the conclusion of the surrender hearing, the judge found that the judge who held the second surrender hearing on December 14, 1998, had not been made aware of the existence of the charges pending in the Lynn District Court at the time she extended Delisle's probation from May, 1999, to December,

---

[7]One of the terms of Delisle's probation was that he "must obey local, state and federal laws and court orders." Assaulting his wife in violation of State law would be violative of this condition, as well as a breach of the conditions set by Emerge for Delisle's readmission into the program.

1999.[8] The judge also found that Delisle had been terminated from the Emerge program because he failed to "write an essay concerning his abuse" of his wife that had been a condition of his readmission into the program; that he failed to pay the program fee with his own money, which "was part of the therapy that was to be then administered"; and that he physically assaulted his wife on December 15, 1998. On the basis of these findings, the judge ultimately found that Delisle had violated the terms of his probation.[9] He then proceeded to revoke Delisle's probation and impose the suspended twelve to fifteen year sentence to State prison "forthwith."

*Discussion.* The essence of Delisle's claim is that the revocation of his probation was improper because it amounted to the imposition of a substantial penalty for the exercise of his Fifth Amendment right against compelled self-incrimination.[10,11] See

[8]Another term of Delisle's probation was the requirement that he report any new arrests to his probation officer. Delisle did not contest the Commonwealth's contention at the surrender hearing that he had never notified his probation officer of the charges brought in the Lynn District Court.

[9]The judge made no findings regarding the assault complaints brought against Delisle in the East Boston District Court, which were the subject of disputed testimony at the surrender hearing.

[10]Delisle did not assert this privilege at the time that he failed to write the reenrollment letter required of him by Emerge. On December 15, 1998, he was given an additional week to complete it but was finally terminated from the program before that week elapsed because of the assault on his wife that occurred that evening. Delisle contends that it was not necessary for him to have actually claimed the privilege because he was placed in the "classic penalty situation" which arises when the State explicitly or implicitly threatens to penalize one for invoking the privilege. See *Minnesota* v. *Murphy*, 465 U.S. 420, 435 (1984). At the surrender hearing, Delisle's counsel made it clear that Delisle was asserting his Fifth Amendment privilege, and that the information sought in the letter would have potentially incriminated him in a number of criminal cases pending against him in the East Boston District Court.

[11]Delisle also claims a violation of art. 12 of the Declaration of Rights of the Massachusetts Constitution, but does not suggest that his rights under art. 12 are any different from those under the Fifth Amendment to the United States Constitution. Delisle's cursory reference to art. 12 "does not rise to the level of appellate argument under Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975)." *Commonwealth* v. *Pike*, 428 Mass. 393, 402 n.5 (1998). "Because the defendant engages in 'no separate discussion of Massachusetts constitutional principles . . . we review the . . . claim solely on the basis of an alleged violation of Federal constitutional principles.' " *Id.*, quoting *Lee* v. *Commissioner of Revenue*, 395 Mass. 527, 534 n.10 (1985).

*Lefkowitz* v. *Cunningham*, 431 U.S. 801, 806 (1977). We disagree.

First, Delisle's probation was not revoked "merely because [he] refused to make . . . disclosures concerning his own criminal conduct." *Minnesota* v. *Murphy*, 465 U.S. 420, 439 (1984). A fair reading of the record of the surrender hearing and the judge's findings support the conclusion that the judge revoked Delisle's probation not only because he was terminated from Emerge, but also because he was convicted of violent offenses against his wife in the Lynn District Court, and because he assaulted his wife on December 15, 1998, on returning from an Emerge session. Repeated assaults perpetrated by a convicted batterer in violation of the terms of his probation are serious matters, and there is no doubt that they provided an ample basis for the revocation of Delisle's probation quite apart from his termination from Emerge, a program intended to reduce the likelihood of such assaults.[12]

Second, there is no sound basis for Delisle's claim that his Fifth Amendment privilege against self-incrimination, that is, his right not to be "compelled in any criminal case to be a witness against himself," was implicated in the circumstances of this case, where the letter he complains of was not sought by the Commonwealth. The Fifth Amendment "not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also 'privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.' " *Minnesota* v. *Murphy, supra* at 426. "The Fourteenth Amendment secures against state invasion the same privileges that the Fifth Amendment guarantees against federal infringement . . . ." *Malloy* v. *Hogan*, 378 U.S. 1, 8 (1964).

The requirement that Delisle write the reenrollment letter was a requirement not imposed by the Commonwealth as a condition of probation, but by Emerge. Indisputably, its purpose was

---

[12]Even Delisle's termination by Emerge (or more accurately its decision not to readmit him to its program) was not based merely on his failure to write the reenrollment letter. In fact, the triggering event was the December 15, 1998, assault on his wife that was reported to Emerge the following day.

to assist Emerge in assessing Delisle's amenability to treatment, an important consideration in Emerge's decision whether to readmit a participant previously terminated for poor performance. Furthermore, the program's policies prohibited the disclosure of the contents of such letters to anyone outside Emerge, including probation officers, without the permission of the participant.

The Fifth Amendment only protects against compelled self-incrimination. See *Minnesota* v. *Murphy, supra* at 434. Compulsion occurs when a person is "induce[d] to forgo the Fifth Amendment privilege by [threat of] economic or other sanctions 'capable of forcing the self-incrimination which the Amendment forbids.' " *Id.,* quoting *Lefkowitz* v. *Cunningham, supra* at 806 (officer of political party cannot be removed by State and barred from holding party or public office for refusal to waive Fifth Amendment privilege). See *Lefkowitz* v. *Turley,* 414 U.S. 70 (1973) (finding unconstitutional statute canceling existing government contracts and precluding future contracts with persons who refuse to answer grand jury questions); *Uniformed Sanitation Men Ass'n* v. *Commissioner of Sanitation of N.Y.,* 392 U.S. 280 (1968) (city workers could not be fired for invoking Fifth Amendment rather than answering questions concerning potential criminal activity regarding collection and misappropriation of fees); *Spevack* v. *Klein,* 385 U.S. 511 (1967) (attorney could not be disbarred for invoking Fifth Amendment rather than providing information in bar discipline proceeding). Based on the record before us, there is no unconstitutional compulsion in this case.

Delisle was terminated from Emerge for poor attendance and performance. He was subsequently offered readmittance by the program (not by the court) subject to several conditions (none of which was imposed by the court), including that he write the reenrollment letter describing his abusive behavior, the effect of such abuse on the victim, and how each act of abuse could have been avoided. The consequence for Delisle's not writing this letter was the possibility that he would not be readmitted by Emerge. This consequence is not an inducement or a penalty rising to the level of compulsion prohibited by the Fifth Amendment.

Delisle's assertion of compulsion is predicated on the penalty of the revocation of his probation. He claims that his probation would be revoked if he did not write the reenrollment letter, but revocation was far from an automatic consequence. See *Minnesota* v. *Murphy*, 465 U.S. 420, 438-439 (1984) (finding no compulsion or violation of Fifth Amendment where revocation of probation was not automatic). Emerge could only decide whether to readmit him; the decision to seek revocation rested with Delisle's probation officer. Beyond that, a revocation hearing was required before a judge who would ultimately determine whether to revoke Delisle's probation and, if so, whether other conditions of probation or the suspended sentence ought to be imposed.[13] His failure to write the letter was just one of many choices he voluntarily made in the face of Emerge's offer to give him a second chance and readmit him into the program if he agreed to certain conditions. Delisle's probation status was not contingent on his decision concerning whether to write the reenrollment letter. Cf. *Mace* v. *Amestoy*, 765 F. Supp. 847 (D. Vt. 1991) (compulsion where probation officer told defendant that refusal to admit to sexual intercourse with victim was violation of probation conditions).

*Improper modification.* Delisle also argues that the requirement that he participate in Emerge, imposed as a condition of his probation at the first surrender hearing, constituted an improper modification of his original probation which required, in relevant part, only that Delisle "shall participate in substance abuse counseling and in personal counseling or therapy as ordered by the probation department." This argument has no merit. Emerge is in fact a particular "personal counseling or therapy" program, as contemplated in the original order of probation. The requirement that Delisle attend Emerge is only a specific directive predicated on the original condition that he participate in an unspecified program.

---

[13]The probation contracts that Delisle signed all carry the following provision: "If you fail to comply with any of the following conditions of probation, now placed on you by this court, you may be ordered to appear again in court, after due notice, and the court may change the conditions, extend the period of probation or impose sentence."

*Conclusion.* For the foregoing reasons, we affirm the revocation of Delisle's probation.

*So ordered.*