## COMMONWEALTH vs. ROY L. HUNT.

No. 09-P-1885.

Plymouth. January 24, 2011. - April 26, 2011.

Present: CYPHER, BROWN, & GRAINGER, JJ.

Further appellate review granted, 460 Mass. 1105 (2011).

*Sex Offender. Constitutional Law,* Self-incrimination, Freedom of speech and press. *Evidence,* Sex offender, Prior violent conduct, Sexual conduct. *Practice, Civil,* Sex offender, Instructions to jury, Argument by counsel, Comment by judge.

At the trial of a civil complaint to commit the defendant as a sexually danger-ous person, the Commonwealth's affirmative use of the defendant's lack of participation in voluntary rehabilitative treatment during the course of his incarceration, to support the Commonwealth's claim of the defendant's ongoing sexual dangerousness, did not result in compulsion for the purpose of the privilege against self-incrimination under the Fifth Amendment to the United States Constitution, where refusal to participate in treatment did not guarantee subsequent civil commitment, and participation in treatment did not require self-incrimination [345-347]; for the same reasons, such use of the defendant's lack of treatment did not result in forced speech in violation of the First Amendment to the United States Constitution [347-348].

At the trial of a civil complaint to commit the defendant as a sexually danger-ous person, no palpable error occurred in the admission in evidence of an incident report of an allegation that the defendant had raped another inmate while incarcerated, where the admission of such evidence was authorized by statute and tended to show an ongoing proclivity for deviant sexual behavior, and where any prejudice was neutralized on recross-examination. [348-349]

At the trial of a civil complaint to commit the defendant as a sexually danger-ous person, the judge in his instructions to the jury did not improperly com-ment on the evidence [349], and his summary of the expert testimony at trial was an accurate synthesis [349-350]; further, an isolated reference regarding the Commonwealth's burden of proof did not leave the jury with an improper inference [350-351].

At the trial of a civil complaint to commit the defendant as a sexually danger-ous person, any improper inference arising from the prosecutor's characteriza-tion of the defendant, in closing argument, as "sexually frustrated" was cured by the judge's instruction [351-352]; further, the prosecutor's characterization of the defendant as a pedophile, and her accompanying sug-gestion that the jury use that fact to evaluate the credibility of experts who suggested otherwise, was not improper [352].

CIVIL ACTION commenced in the Superior Court Department on June 4, 2004.

The case was tried before *Jeffrey A. Locke*, J.

*Brandon L. Campbell* for the defendant.

*Christine M. Kiggen*, Assistant District Attorney, for the Commonwealth.

GRAINGER, J. The defendant, who appeals his commitment as a sexually dangerous person, G. L. c. 123A, declined to participate in voluntary rehabilitative treatment during the course of his incarceration after pleading guilty to charges of rape of a child. On appeal, he seeks to characterize the Commonwealth's affirmative use of his lack of treatment to support its claim of his ongoing sexual dangerousness as a violation of both the First and Fifth Amendments to the United States Constitution. In addition, the defendant claims that the judge erred in admitting unfairly prejudicial evidence and in instructing the jury, and that the prosecutor's closing argument amounted to reversible error. We conclude that the defendant's claims are without merit.

*Constitutional claims.* 1. *Fifth Amendment.* The Fifth Amendment protects individuals from being "compelled in any *criminal* case to be a witness against" themselves (emphasis supplied). General Laws c. 123A "does not intend punishment and does not in terms impose it, and nothing therein justifies punitive treatment or confinement under any prison conditions." *Commonwealth v. Barboza*, 387 Mass. 105, 111, cert. denied, 459 U.S. 1020 (1982), quoting from *Commonwealth v. Major*, 354 Mass. 666, 668 (1968), cert. denied, 393 U.S. 1109 (1969). To the contrary, "the Massachusetts court and [L]egislature have made considerable effort to differentiate between the treatment of the sexually dangerous, on the one hand, and the penalizing of criminals on the other." *Commonwealth v. Barboza, supra* at 112, quoting from *Gomes v. Gaughan*, 471 F.2d 794, 800 (1st Cir. 1973). See *Commonwealth v. Bruno*, 432 Mass. 489, 499-502 (2000) (G. L. c. 123A remedial as opposed to punitive in nature). Chapter 123A proceedings are not criminal prosecutions; the Fifth Amendment prohibition against compelled self-incrimination consequently is not violated by the use of a defendant's refusal to participate in treatment as evidence in these proceedings. *Hill, petitioner*, 422 Mass. 147, 152, cert. denied, 519 U.S. 867 (1996), citing *Com-*

monwealth v. *Barboza, supra* at 113. See, e.g., *Custody of Two Minors*, 396 Mass. 610, 617 (1986).

To circumvent the defect in his argument posed by the civil character of G. L. c. 123A proceedings, the defendant focuses instead on the possibility of future criminal prosecution. Specifically, he contends that the anticipated use of his lack of treatment to ensure his commitment in a c. 123A proceeding effectively forces him to participate, which in turn compels him to make admissions that may serve as the basis of future criminal charges.[1] He argues that, by using his lack of treatment offensively during the c. 123A proceedings, the Commonwealth has subjected him to a constitutionally prohibited Hobson's choice: either accede to treatment that requires incriminating statements or face a substantially increased likelihood of civil commitment upon the completion of his term of incarceration. However, we decline to speculate on the outcome if the Commonwealth were to base a future criminal prosecution on such statements; that is not the case before us.

We are cognizant of the risks inherent in conditioning treatment on a waiver of the Fifth Amendment right. See *McKune* v. *Lile*, 536 U.S. 24 (2002); *Pentlarge* v. *Murphy*, 541 F. Supp. 2d 421 (D. Mass. 2008). In certain circumstances, the consequences flowing from such action may make the exercise of that right costly. Here, it is undisputed that the defendant was presented with the choice of accepting the benefit of treatment or turning down that benefit in order to avoid providing what he feared would be self-incriminating statements. "Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." *McKune* v. *Lile*, *supra* at 53 (O'Connor, J., concurring), quoting from *McGautha* v. *California*, 402 U.S. 183, 213 (1971).[2]

---

[1] The defendant is concerned that the statute of limitations may not have run on uncharged conduct. See, e.g., G. L. c. 277, § 63.

[2] As Justice O'Connor based her conclusion in *McKune* v. *Lile, supra*, on the narrower ground that the treatment policy in question did not amount to compulsion under the Fifth Amendment, we adopt her concurrence as the holding of the Court. See *Marks* v. *United States*, 430 U.S. 188, 193 (1977), quoting from *Gregg* v. *Georgia*, 428 U.S. 153, 169 n.15 (1976) (stating that the holding of a fragmented Court "may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds").

Moreover we do not adopt the assumptions underlying the defendant's arguments. The record does not establish that failure to participate in treatment guarantees subsequent civil commitment pursuant to G. L. c. 123A.[3] Rather, participation in treatment was merely one of several factors considered at the defendant's trial to determine sexual dangerousness. Compare *Baxter v. Palmigiano*, 425 U.S. 308, 317-318 (1976) (adverse inference from inmate's silence during disciplinary hearing not violation of Fifth Amendment where adjudication of guilt was not automatic), and *Commonwealth v. Delisle*, 440 Mass. 137, 145 (2003), citing *Minnesota v. Murphy*, 465 U.S. 420, 438-439 (1984) (no compulsion or violation of Fifth Amendment where revocation of probation was not automatic), with *Uniformed Sanitation Men Assn., Inc. v. Commissioner of Sanitation of the City of New York*, 392 U.S. 280, 282-283 (1968) (violation of Fifth Amendment where failure to incriminate oneself resulted in automatic termination of employment).

In this light, the consequence flowing from the defendant's lack of treatment was not "so great as to constitute compulsion for the purposes of the Fifth Amendment privilege against self-incrimination." *McKune v. Lile, supra* at 49 (O'Connor, J., concurring).

We note as well that unlike the rehabilitative program in *McKune v. Lile, supra*, the treatment at issue in the present case does not clearly require participants to acknowledge past, uncharged offenses as a condition of treatment. The record reflects that treatments such as that at issue here typically focus on a defendant's willingness to take responsibility for the actions that resulted in his incarceration. Nothing in the record suggests mandatory disclosure of past, uncharged conduct. Thus, although participation in treatment requires the defendant to waive confidentiality, any subsequent reference to prior instances of uncharged criminal conduct would be entirely volitional.

2. *First Amendment.* The defendant also alleges he has a First Amendment right to refuse to participate in treatment, and that the Commonwealth may not punish him for exercising that

---

[3]The experts who testified at the defendant's commitment trial differed in their opinions as to whether a refusal to accept treatment foreshadowed an increased likelihood of recidivism.

right. As with his Fifth Amendment claim, the defendant addresses the fact that he is not actually forced to speak by arguing that the consequences for refusing make his participation in treatment compulsory. He thereby invokes the doctrine of forced speech. See, e.g., *West Va. State Bd. of Educ.* v. *Barnette*, 319 U.S. 624, 645 (1943) (Murphy, J., concurring) ("The right of freedom of thought . . . as guaranteed by the Constitution against State action includes both the right to speak freely and the right to refrain from speaking at all"). Our conclusions in the Fifth Amendment context, that the Commonwealth's affirmative use of a defendant's nonparticipation in sex offender treatment against him in c. 123A proceedings does not amount to compulsion, that refusal does not guarantee subsequent G. L. c.123A commitment, and that participation does not require self-incrimination, apply as well to the defendant's First Amendment claim.

*Improper admission of evidence.* The defendant argues that evidence of his alleged rape of another inmate, improperly admitted by the trial judge, unfairly prejudiced his case in the eyes of the jury. In the instant case, the aforementioned rumor was contained within an incident report arising out of the defendant's incarceration.[4] As the trial judge recognized, G. L. c. 123A, § 14(c), explicitly provides for the admission of incident reports in their entirety. See *Commonwealth* v. *Markvart*, 437 Mass. 331, 336 (2002) (§ 14[c] makes admissible all items required to be provided to qualified examiners under § 13[b]); *McHoul, petitioner*, 445 Mass. 143, 153 (2005), cert. denied, 547 U.S. 1114 (2006) ("statute allowing the admission of records and reports that, by their nature, often include the gathering of information from a variety of hearsay sources signifies the Legislature's determination that such hearsay should be admitted in sexually dangerous persons proceedings"). Such reports carry a "considerable degree of reliability" in c. 123A proceedings. *McHoul, petitioner, supra* at 151. We are unpersuaded that the admission of evidence authorized by statute that tends

---

[4]The information was set forth on a form related to the defendant's appeal of a reclassification of his inmate status stemming from his refusal to enter the general population. The refusal, motivated by the defendant's fear of reprisals by other inmates for the alleged rape, resulted in the defendant's transfer to higher security incarceration.

to show an ongoing proclivity for deviant sexual behavior, in a trial to assess ongoing sexual dangerousness, amounts to palpable error. See *Commonwealth* v. *LaSota,* 29 Mass. App. Ct. 15, 24 (1990). Moreover, any prejudice was neutralized on recross-examination, where defense counsel established the Commonwealth's lack of any concrete evidence that the rape had ever occurred.

*Jury instructions.* The defendant asserts errors in the jury instructions. He specifically contends that the judge improperly commented on the evidence and also provided inconsistent instructions on standards for mental abnormality and proof beyond a reasonable doubt.

In considering these issues, "[w]e look to the charge as a whole to determine whether it fairly instructs the jury." *Commonwealth* v. *Smiley,* 431 Mass. 477, 487 (2000), quoting from *Commonwealth* v. *Richardson,* 429 Mass. 182, 185 (1999). In evaluating whether a trial judge erred, "[w]e consider what a 'reasonable juror could have interpreted the instruction' to mean." *Ibid.*

1. *Improper commentary.* The trial judge instructed the jury that "[y]ou may conclude that the [defendant] is likely to commit a future act of sexual misconduct if you find that the [defendant] has not committed any act of sexual misconduct during his incarceration." The defendant contends that this instruction constituted improper commentary on the evidence. We disagree. The instruction, although somewhat confusingly phrased, does not suggest guilt beyond a reasonable doubt in the absence of recent sexual misconduct. Rather, the instruction was part and parcel of the judge's correct legal instruction that the Commonwealth need not prove recent sexual misconduct in order to prove that the defendant is a sexually dangerous person.[5]

2. *Mental abnormality.* After correctly instructing the jury on the definition of a mental abnormality pursuant to G. L. c. 123A, § 1, the judge summarized the expert testimony at trial as follows: "[A]ll the experts agreed that the mental abnormality at issue is pedophilia, although the experts disagree about whether

---

[5]The words at issue were preceded by their converse: "I caution you, however, that past misconduct is not in and of itself sufficient to establish a present likelihood of future misconduct."

[the defendant] meets the clinical diagnostic criteria for pedophilia." The defendant, citing no supporting Massachusetts case law, alleges that the judge's summation conflated a diagnosis of pedophilia with a finding of mental abnormality, and in the process failed to convey to the jury the necessity of finding that the defendant lacked the ability to control his pedophilia. To the contrary, we find the judge's summary to be an accurate synthesis of the trial testimony.[6] Any control requirement was adequately conveyed to the jury via the definition of mental abnormality, which requires that a condition "predispose[] [a] person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." G. L. c. 123A, § 1, as inserted by St. 1999, c. 74, § 4.[7]

3. *Proof beyond a reasonable doubt.* The defendant points to one statement in the judge's charge that reduced the Commonwealth's burden to a mere preponderance of the evidence. While the judge's phrasing was directed to discharge rather than committal, there is no doubt that the phrasing was, at best, confusing. The statement uses the words "beyond a reasonable doubt" even while describing evidence that admits of "two plausible inferences."[8] As stated, we therefore examine the entire charge to determine whether instruction on reasonable doubt is adequate. *Commonwealth* v. *Beverly,* 389 Mass. 866, 870 (1983). Though "[s]tanding alone, a particular portion of a

[6]All six experts agreed that the mental abnormality at issue was pedophilia. However, several experts questioned the characterization of the defendant as a pedophile. Dr. Joseph Plaud opined that while it was "not impossible to make that diagnosis . . . it's a weak one and its applicability today is questionable." Likewise, Dr. Daniel Kriegnan opined that while "[y]ou could definitely apply the label pedophilia" to the defendant based on his prior conduct, the diagnosis "captures a lot of . . . people who aren't, don't have any particular pedofilic [*sic*] sexual orientation," namely a lingering affinity for sexual contact with prepubescent children.

[7]The jury were further instructed that a finding of sexual dangerousness required them to conclude, beyond a reasonable doubt, that the defendant's mental abnormality made it "likely that he will commit a sexual offense . . . unless he is confined to a treatment facility."

[8]In conjunction with his instruction on direct and circumstantial evidence, the judge instructed the jury that "if the evidence supports [two] plausible inferences, one consistent with the finding of the respondent as sexually dangerous and the other that he is not, th[e]n that cannot be said that the proposition favoring the finding of sexual dangerousness has been established beyond a reasonable doubt."

charge on reasonable doubt might be misleading, . . . in the context of the entire charge the language may be appropriate, or at least not so prejudicial as to require reversal." *Id.* at 871. Here, the judge subsequently provided the jury with a thorough instruction on proof beyond a reasonable doubt, noting that proof required "an abiding conviction to a moral certainty that the allegation is true."[9] Thus, in the context of the entire charge, we conclude that the isolated reference did not leave the jury with an improper inference.

*Closing argument.* The defendant points to numerous missteps made in closing argument by the Commonwealth. Though we agree that the prosecutor's closing was not a model of propriety, we are unpersuaded that it amounted to reversible error. "A prosecutor is entitled to argue the evidence and fair inferences to be drawn therefrom." *Commonwealth* v. *Myer*, 38 Mass. App. Ct. 140, 146 (1995), quoting from *Commonwealth* v. *Viriyahiranpaiboon*, 412 Mass. 224, 231 (1992). We are also mindful of the purpose of c. 123A proceedings, namely, to evaluate the sexual dangerousness of a defendant were he to be released back into society.

The Commonwealth's characterization of the defendant as "sexually frustrated" after his long term of incarceration was clear sophistry — it attempted to employ the defendant's serving of his sentence as a predictor that he would reoffend. Certainly

---

[9]The instruction on reasonable doubt stated, in relevant part:

"An allegation is [proven] beyond a reasonable doubt if, after you've compared and considered all of the evidence, you have in your minds an abiding conviction to a moral certainty that the allegation is true. If you evaluate all the evidence and you still have reasonable doubt remaining, then the [defendant] is entitled to the benefit of that doubt, and your verdict must be that he is not sexually dangerous. It is not enough for the Commonwealth to establish a probability, even a strong probability, that the [defendant] more likely than not is sexually dangerous. That is not enough. Instead, the evidence must convince you of the Commonwealth's allegation to a reasonable and moral certainty, a certainty that convinces your understanding and satisfies your reason and judgment as jurors who are sworn to act consciously on the evidence. This is what we mean by proof beyond a reasonable doubt."

This instruction contains the very language we have approved to explain the term "moral certainty" and validate its use in defining "beyond a reasonable doubt." *Commonwealth* v. *Morrill*, 68 Mass. App. Ct. 812, 817-818 (2007).

this comment was better left unsaid. Again, to determine any prejudice, we look to the entire closing as well as the instructions that followed.[10] A majority of the panel are satisfied that any improper inference was cured by the judge's instruction that the jury were not to be swayed by a concern that the defendant may be released into the community. See *Commonwealth* v. *Maynard*, 436 Mass. 558, 571 (2002) (jury presumed to follow the judge's instructions).

The prosecutor's characterization of the defendant as a pedophile, and her accompanying suggestion that the jury use that fact to evaluate the credibility of experts who suggested otherwise, was not improper. The defendant had been convicted of three counts of rape of a child, and four of the six experts at the G. L. c. 123A trial testified that his pedophilia persisted. Nor did the prosecutor mischaracterize expert testimony by suggesting that Drs. Plaud and Kriegnan disputed the continuing validity of the diagnosis. Though both experts testified that the defendant met the diagnostic criteria for pedophilia, neither agreed that there was enough evidence to conclude that the condition persisted to the degree that it constituted a mental abnormality at the time of trial.[11]

*Judgment affirmed.*

---

[10]Despite this comment and the other errors alleged, the defendant's sole objection during closing argument came in response to the Commonwealth's characterization of the defendant as a pedophile. "Although not dispositive of the issue, the absence of any [objection] from experienced counsel is some indication that the tone, manner, and substance of the now challenged aspects of the prosecutor's argument were not unfairly prejudicial." *Commonwealth* v. *Toro*, 395 Mass. 354, 360 (1985).

[11]The defendant also challenges the trial judge's excuse, for cause, of a potential juror whose responses to voir dire questions suggested an inability to accept the conclusions of expert witnesses. As an initial matter, we are perplexed as to why the defendant would desire to seat a juror who believes that "Massachusetts law is too lenient in· [sexual dangerousness] cases." To the extent that we do not address this contention, it "ha[s] not been overlooked. We find nothing in [it] that requires discussion." *Department of Rev.* v. *Ryan R.*, 62 Mass. App. Ct. 380, 389 (2004), quoting from *Commonwealth* v. *Domanski*, 332 Mass. 66, 78 (1954).